Stewart, J.
 

 There are' two questions which must be decided by this court.
 

 (1) Whether the appeal provided in Section 7690-6, General Code, should have been heard as a case
 
 de novo
 
 by the Court of Common Pleas or whether such appellate provision provided simply a review by the court,
 
 *347
 
 and confined the court to questions affecting the jurisdiction of the board, the regularity of its proceedings and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent or under an erroneous theory of the law, or without sufficient evidence to support it.
 

 (2) Whether after a continuing contract has been given a teacher, gross inefficiency for which it may be terminated may be shown to continue to exist by evidence of acts or characteristics which antedate the continuing contract.
 

 It is upon our answers to the above two questions that the judgments in these- cases must depend.
 

 Whether the appeal allowed in Section 7690-6, General Code, contemplated simply a review of the proceedings of the board or a trial
 
 de novo
 
 is a question not without difficulty. The appeal had some of the characteristics of both. Such section provided for the bringing of an action, which would seem to indicate a new and independent trial. • On the other hand, the court was required to examine the transcript and record of the hearing before the board of education and was given a mere discretion as to the holding of additional hearings and the consideration of other evidence in addition to such transcript and record. It would obviously seem that, if the General Assembly' had intended the appeal provision to provide for a trial
 
 de
 
 novo, it would necessarily follow that the court would have been required to hear all material, relevant and probative evidence which either party might desire to present. We find it impossible to come- to the conclusion that a trial
 
 de novo
 
 was intended when the court was given sole discretion as to whether it would hear any additional evidence or hold any additional hearings after examining the transcript and ■ record of the hearing before the board.
 

 
 *348
 
 The Supreme Court of Minnesota construed its Teachers’ Tenure Act in the case of
 
 State, ex rel. Ging,
 
 v.
 
 Board of Education of City of Duluth,
 
 213 Minn., 550, 7 N. W. (2d), 544. In speaking of appeals from the findings of a board of education, the court there said:
 

 “Complete jurisdiction cannot, either directly or indirectly, be conferred upon the courts in view of the constitutional division of the powers of government. * * * [citing cases.] Yet a limited jurisdiction by way of
 
 certiorari,
 
 and in some cases by statutory appeal, is conferred' upon the courts. This is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of the law, or without any evidence to support it. A court cannot put itself in the place of the board, try the matter
 
 de novo,
 
 and substitute its findings for those of the board.”
 

 Later in the opinion the court said:
 

 “So here, neither the district court on
 
 certiorari
 
 nor this court on appeal could interfere with the school board in its decision as to the existence of statutory grounds for discharge, provided the board ■acted in good faith and on a correct interpretation of the law. The Legislature never so intended by the enactment of the Teachers’ Tenure Act. A statute which so provided would be unconstitutional as a delegation to the judiciary of nonjudicial powers.”
 

 In 42 American Jurisprudence, 662, Section 224, it is stated:
 

 “It is a general rule that in the absence of a statute so providing, a court is confined on review proceedings to the record made in the proceeding below, and may not hear new or additional evidence, unless the proceeding is a trial
 
 de novo.
 
 The same principle is ap
 
 *349
 
 plied in the field of review of administrative action, and the general rule is that in the absence of a statute providing otherwise, the review is limited to the record made in the administrative proceeding, and the courts decline to hear new or additional evidence to review or revise findings of facts made by "the administrative tribunal, especially where the evidence was available and could have been introduced in the administrative tribunal. To allow findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal. However, the absence of essential findings of fact, or the presence of á constitutional or jurisdictional question, or the fact that the evidence was not capable of being introduced below, may require the courts to permit the admission of new or additional evidence.”
 

 It seems to us that the General Assembly intended the appeal provision in Section 7690-6, General Code, to be confined to a judicial review of the proceedings of the board of education and to give the court, discretion to hold further hearings to be certain that the proceedings before the board were legally regular and not arbitrary, oppressive, unreasonable or fraudulent; and that it was not the intention of the General Assembly to provide a trial
 
 de novo.
 

 We come now to the question whether the charge of gross inefficiency against appellants, when it is 'conceded neither of them had taught since the date of their continuing contracts, could be shown to exist after the date of such contracts by evidence of events and characteristics which antedated the contracts.
 

 With reference to Powell, Burtsfield, under whom as principal Powell taught from 1922 to 1926 in one school and from 1938 to 1941 in another, testified that during such times he was required to call her into his office concerning her cuffing and slapping of pupils, such acts occurring frequently, and upon at least two
 
 *350
 
 occasions she had apologized to the parents of the children and admitted that she had probably been too severe; that her method of teaching brought about considerable friction; that her predominant disqualification was the creation of fear in her pupils; that she had upon one occasion cut the hair of one of her pupils before the others in the classroom; that she had admitted so doing; and that in considering the welfare of the children she was a poor teacher.
 

 Sexton, under whom as principal Powell taught for one-half year, testified that she struck one pupil with the pointed end of a lead pencil, causing a scalp wound on his head; that her excuse was that the child had not done something he was told to do; and that she had struck another pupil with the sharp end of a lead pencil, puncturing the palm of his hand.
 

 Edmunds, under whom as principal Powell taught in 1931 and 1936, testified as to her inefficiency, that the witness rated her as a poor teacher, that Powell would hold slow-learning pupils up to ridicule and that. Powell admitted she frequently lost her temper and administered corporal punishment.
 

 If this evidence is to be believed it would show characteristics which would not even have been tolerated in the days when the hickory stick was the symbol of authority in the classroom.
 

 As to Weekley, there was evidence before the board of education showing emotional instability. She constantly wrote and interviewed members of the board of education and school superintendents.
 

 In one letter to a superintendent of schools she wrote:
 

 “I am still troubled and afraid. I am more worried than at any time in the five years since Mr. Sexton changed in his attitude toward me.
 

 “This is just something I can’t get over.”
 

 
 *351
 
 Sexton was a principal under whom Weekley served for a number of years.
 

 On July 27,1940, she wrote to the superintendent of schools saying:
 

 “* * * For my peace of mind I would like to talk with you before the opening of school this fall. * * * ”
 

 On May 15, 1941, she wrote a letter to a member of the board of education, in which letter she said: '
 

 ‘ ‘ The past six years have been ones of terrific strain through no fault of my own. Unless it was mistaken friendship for another.
 

 “Until six years ago Mr. Sexton was friendly, agreeable and approving both in word and in manner. I would not have had that situation changed had it been in my power to prevent. ’ ’
 

 On May 17, 1941, she wrote to another member of the board, saying:
 

 “This situation that I am bringing to your notice came about through no fault of mine unless it was through a mistaken act of friendship in keeping silent about the misconduct of another employee of the board of education. And of which I had unwilling knowledge. I know that he has brought this thing about through fear for himself. You are intelligent and you know that only cowards strike from behind. I have been and am a good teacher even though I have been under a terrific strain for six’ years because of this situation.”
 

 While serving under Sexton she wrote him three anonymous notes as follows:
 

 (1) “I can put my finger on the reason. Just after Easter at noon five years ago.”
 

 (2) “Do you have any wonder that I have become brittle as glass?”
 

 (3) “Eive years is a long time for a woman to keep a secret.”
 

 
 *352
 
 In her testimony WeeMey said that the anonymous notes referred to the fact that she happened to come into Sexton’s office one day and saw him with his arm around a school nurse; that the incident had shocked and worried her; and that she .had written the anonymous notes to him because she had wanted him to know the reason and to remind him.
 

 Traenkle, who was principal of different Youngstown schools for 15 years, testified that Weekley’s work was so inefficient that he reported it as not satisfactory; that he was in her room enough to see her teaching was not efficient; that the children were not receiving an education; that the frames of mind of the children were such they were not happy in the classroom ; that there .was a great loss of time; that there did not seem to be a plan for good teaching; that there was not a reasonable standard of discipline; and that he felt and concluded the situation could not be changed and would not be changed.
 

 Sexton testified to the effect that he had never made an improper gesture to any one, and that his alleged misconduct with the nurse was a fabrication. He described Weekley’s peculiar complex in that she felt she did not have a friend in the school, testified that he'had observed her teaching and conduct and ra,ted her as a poor disciplinarian, a poor teacher, and he described details of her emotional instability.
 

 Perkins, who had been principal at South Avenue School, testified as to Weekley’s inefficiency. To the same effect was the testimony of Bowman, Haddow, director of elementary schools, and Webb, supervisor of art.
 

 It is true that the appellants denied some of the charges, explained others and produced witnesses who testified contrary to the evidence which has been referred to herein,' but such state of affairs presented a question of fact to be decided by the board of educa
 
 *353
 
 tion after the hearing before it. The board decided in the cases of both appellants that the charges of gross inefficiency had been sustained and terminated the contracts.
 

 Upon appeals to the Court of Common Pleas' not only were the findings of the board affirmed, but it was held that the decisions of the board were not against the manifest weight of the evidence.
 

 The judgments of the Common Pleas Court were affirmed by the Court- of Appeals.
 

 Since this court does not weigh the evidence in such cases, and since no charge of irregularity or fraud in reference to the board, is involved herein, we must affirm the judgments of the court below unless it appears that gross inefficiency cannot be shown to have existed after the tenure contracts were entered into, by testimony as to acts and characteristics which antedated the contracts.
 

 Weekley, after having been notified as to the charges of the board of education, brought an action in this court for a writ of prohibition to prevent the board from proceeding with the hearing to terminate her continuing contract. She claimed that the board had no jurisdiction to determine charges against her because such charges referred to a period prior to the effective date of her continuing contract; that the board was estopped from inquiring into her conduct prior to September 1, 1941; and that the adjudication in her mandamus case, directing the board to enter into the continuing contract, was
 
 res judicata
 
 as to all matters prior to the date of such contract.
 

 The prohibition case is reported as
 
 State, ex rel. Weekley,
 
 v.
 
 Young et al., Bd. of Edn.,
 
 141 Ohio St., 260, 47 N. E. (2d), 776. Paragraphs one and three of the syllabus of that case are:
 

 “1. A continuing contract entered into between a board of education and a teacher pursuant to the
 
 *354
 
 Teachers’ Tenure Act, Section 7690-1
 
 et seq.
 
 [now Section 4842-7
 
 et seq.],
 
 General Code, may be terminated upon any ground which is therein specified and which arises or exists during the time the contract is in force.”
 

 “3. Where a disqualification, which would warrant the termination of a teacher’s contract,' existed prior to an adjudication in mandamus, ordering and directing that a continuing contract be entered into with a teacher who has a continuing contract status, such adjudication is not
 
 res judicata
 
 as to a charge based upon the same disqualification within a period subsequent to the time the continuing contract became effective.”
 

 On page 265 Judge Williams said:
 

 “Gross inefficiency (as specified in the notice sent to the relatrix by the board), if existent after, the date the contract took effect, would warrant such termination, even though the employed teacher never taught under that particular contract. It may be urged that, in proof of such charge, evidence of inefficiency extending back a reasonable time into the period covered by the previous contract would be admissible as an aid in establishing that ground. On that question it is not necessary to pass at this time. Nevertheless a contract cannot be terminated upon any ground based upon what happened prior to the effective date of such contract or upon a disqualification that has not existed since that date.”
 

 It is apparent that case- decided that, although a tenure contract cannot be terminated upon any ground which existed prior to the effective date of such contract or upon a disqualification which has not existed since such date, nevertheless if gross inefficiency exists since the date of the contract it would justify a dismissal. In other words, misconduct on the part of a teacher which existed prior to her contract could not
 
 *355
 
 of itself be used to terminate her contract, but if it were proven that she was grossly inefficient and that the inefficiency continued after the date of her contract, it would then be ground for her dismissal even though she had not taught a single day after the contract became effective.
 

 Although Judge Williams stated that it was not necessary to pass upon the question whether in proof of a charge of existing inefficiency evidence of such inefficiency extending back a reasonable time into the period covered by the previous contract would be admissible as an aid in establishing that ground, the majority of this court now holds that such evidence is admissible and that, since the board- of education in the instant cases has found the evidence proves existing inefficiency and two intervening courts have failed to disturb those findings upon the weight of the evidence, such findings are conclusive upon this court.
 

 It is true that in the recent case of
 
 Roller
 
 v.
 
 Young et al., Bd. of Edn.,
 
 147 Ohio St., 13, 19, 67 N. E. (2d), 710, this court said;
 

 “Under the view taken in the case of
 
 State, ex rel. Weekley,
 
 v.
 
 Young et al., Bd. of Edn.,
 
 141 Ohio St., 260, 265, 47 N. E. (2d), 776, 779, that
 
 ‘a
 
 contract cannot be terminated upon any ground based upon what happened prior to the effective date of such contract,’’ the board improperly terminated the contract.”
 

 That language can be justified if it was intended to mean that an episode of misconduct prior to the effective date of a tenure contract cannot be the ground for termination of that contract, but' such language could not have been intended to have the broad meaning that gross inefficiency cannot be shown to exist subsequent to the contract even though the teacher has not taught under the same. Such a meaning would be in direct conflict with both paragraph one of the syl
 
 *356
 
 labus and the language of Judge Williams as quoted
 
 supra
 
 from the
 
 Weekley prohibition case.
 

 In the ease of
 
 State, ex rel. Cochrane, v. Peterson,
 
 208 Minn., 361, 364, 294 N. W., 203, the Supreme Court of Minnesota, in discussing a question similar to the one with which we are now concerned, stated:
 

 “In this connection relator also argues that the charges filed could only relate to her conduct during the school year beginning September, 1939, and hence the inefficiency in relator’s teaching and in management of her classes during the school year ending June, 1939, and prior years could not be inquired into or be made the basis for discharging her. This contention we think unsound. Where teachers have attained permanent employment under the tenure act, there is no reason why, upon a charge of inefficiency, the past conduct as a teacher should not be open to scrutiny. Efficiency in teaching and discipline is required of teachers in public schools, and lack thereof is recognized by Section 2935-6(c) as ground for discharge. That the authorities have been patient with a teacher and have tried him or her in different positions in the hope of finding some place where efficiency was manifested should not defeat the right to discharge such teacher if efficiency nevertheless was not attained. We think the record here fully demonstrates the aid and opportunity extended to relator by her superiors to the end that she might become efficient as a teacher. She had served her probationary period ending with June 1934. And we see no jurisdictional objection to receiving evidence, as to relator’s teaching ability since her permanent employment under the charges filed.”
 

 A well considered case bearing upon this question is that of
 
 Hughes
 
 v. Department
 
 of Public Safety of City of St. Paul,
 
 200 Minn., 16, 273 N. W., 618. That case involved charges against a police officer of inefficiency, breach of duty and misconduct in the per
 
 *357
 
 formalice of Ms duties. His prior-service record was held admissible as bearing upon the question of his inefficiency although such record was not competent as evidence to prove charges of misconduct. The court said on page 21:
 

 “In addition to the charges of breach of duty and misconduct in this case, reference to which will be made hereafter, appellant was also charged with inefficiency, A man’s prior record has an important bearing upon the question of his efficiency or inefficiency. It would be a sorry state of affairs if civil service boards in passing upon the qualifications of applicants for appointment were confined upon consideration of the question of efficiency to the applicant’s record in that respect as of the day his application was being considered and were prevented' from considering or reviewing the applicant’s past record. * * *
 

 “Inefficiency, as pointed out by the court in the case of
 
 State, ex rel. Hart,
 
 v.
 
 Common Council,
 
 53 Minn., 238, 55 N. W., 118, 39 A. S. R., 595, does not consist of a separate act but embraces a course of conduct, a lack of integrity, or limitation of capacity. If appellant’s contention is correct that once a breach of duty or misconduct has been passed upon by the proper authority and punishment in the discretion of that party has been meted out to the offender then no subsequent action involving that matter can ever be taken against appellant, it would be but seldom that there would be sufficient acts available to put in evidence to prove a charge of inefficiency regardless of how flagitious has been the officer’s career in the public, service. The charge of inefficiency is a charge distinct from that of breach of duty or misconduct. Inefficiency denotes incapability for office, while misconduct denotes an improper discharge of the duties of the office. While an officer may not twice be punished for the same misconduct, the act of misconduct may later be used
 
 *358
 
 against bim to prove that he is unfiit for office because-of inefficiency.”
 

 In the case of
 
 Redcay, Prosecutor,
 
 v.
 
 State Board of Education,
 
 130 N. J. Law, 369, 33 A. (2d), 120, the court had before it a situation where a school principal had been dismissed under the tenure-of-contract law which provided that “the services of all teachers, principals and supervising principals of public schools * * * shall be during good behavior and efficiency,” after three years of service in the district and that “no-teacher, principal, or supervising principal under the tenure referred to * * * shall be dismissed * * * except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause * * *.”
 

 The court said at page 371:
 

 “It was also claimed that incidents prior to, July 1st, 1939, the date of the alleged contract which we have seen was not á contract, should not have been considered. We think they should. Unfitness for a task is best shown by numerous incidents. Unfitness for a position under the school system is best evidenced by a series of incidents. Unfitness to hold a post might be shown by one incident, if sufficiently flagrant, but it might also be shown by many incidents. Fitness may be shown either way. His was not an elective office where the citizens by their vote had made the selection. ’ ’
 

 TÍie finest possible public school system has been one of the primary objectives of Ohio from its very beginning. In the Ordinance for The Government of The Territory of The United States Northwest'of The River Ohio, passed by Congress on July 13, 1787, before the Constitution of the United States was adopted, it was provided: “Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged. ’ ’ This ' has
 
 *359
 
 been -our goal ever since, bnt it must be remembered that a school system is instituted primarily for the benefit of the youth who are therein enrolled.' Their welfare and training for future citizenship in a free government are the paramount purposes of the public schools. In promoting this objective it is essential that efficient teachers of the highest grade be provided, and in order to secure such teachers they must be adequately paid and have a security of position free from political pressure or the caprices, likes or dislikes of any groups or boards of education.
 

 It must be borne in mind, however, that boards of education are composed of members elected by the people to administer “the affairs of the schools, and that the passage of the Teachers’ Tenure Act did not take away that administrative responsibility.
 

 The Teachers’ Tenure Act was passed to furnish security of position to competent and efficient teachers in order that the school system might continuously move nearer to its ideals. It is essential to the future of an educated citizenship that well trained, upright and efficient teachers be secure in their positions, but that inefficiency and unfitness be, so far as is possible, eliminated from the schools. To protect teachers in this necessary security, the law of Ohio has provided that upon any charge of gross inefficiency as a basis "for the termination of a tenure contract the teacher must have a full and fair hearing, private or public as he may elect, and that the decision of the board of •education may be fully reviewed by the courts. If any further protection is required the appeal must necessarily be to the General Assembly.
 

 For the reasons that we hold that the appellate' procedure authorized by Section 7690-6, General Code,' did not authorize a trial
 
 de novo\
 
 that evidence of prior acts and characteristics showing gross inefficiency is competent to prove a present existing state
 
 *360
 
 thereof; that in the reviews by the Court of Common Pleas it was held that the decisions of the board of education were not against the manifest weight of the evidence; and that the judgments of the Common Pleas Court were affirmed by the Court of Appeals; the judgments of the Court of Appeals in both of these cases are affirmed.
 

 Judgments affirmed.
 

 Turner, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., Zimmerman and Sohngen, JJ.,. dissent.
 

 . Weygandt, C. J., dissents on «the ground that Section 4842-12, General Code, confers the right to a trial
 
 de novo.