THE STATE, EX REL. FRED STECKER LINCOLN-MERCURY, INC., *v.* OHIO MOTOR VEHICLE DEALERS BOARD ET AL.

[Cite as State, ex rel. Fred Stecker Lincoln-Mercury, Inc., *v.* Ohio Motor Vehicle Dealers Bd. (1985), 18 Ohio St. 3d 391.]

(No. 84-1038—Decided August 7, 1985.)

*Anthony Calabrese, Jr.,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Luis M. Alcalde,* for respondents.

*Price, Berry & Shoemaker* and *Kevin L. Shoemaker,* urging denial of the writ for *amicus curiae* Ohio Automobile Dealers Association.

*Baker & Hostetler, George W. Hairston, Perry R. Silverman, Jeffrey H. Friedman* and *Frank A. Chenette,* urging denial of the writ for *amicus curiae* Hal Artz Lincoln-Mercury, Inc.

*Per Curiam.* It is by now firmly established in this state that entitlement to the extraordinary writ of mandamus is contingent upon a finding that "relator has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3], paragraph one of the syllabus; *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42 [15 O.O.3d 53]; *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, certiorari denied (1983), __ U.S. __, 78 L. Ed. 2d 723. Respondents contend relator has failed to satisfy the necessary conditions precedent to the issuance of the writ. We agree and for the reasons which follow hereby deny the writ.

Initially, relator has failed to identify its clear legal right to be issued a new motor vehicle dealer's license as well as respondents' clear legal duty to issue the license. An examination of the pertinent portions of R.C. Chapter 4517 demonstrates that any right relator may have possessed to obtain the dealership license was first contingent upon the approval of Ford's franchise proposal.

Pursuant to R.C. 4517.50,[2] when a franchisor (in this case Ford)

---

[2] R.C. 4517.50 provides:

"(A)  Except as provided in division (D) of this section, when a franchisor seeks to enter into a franchise to establish an additional motor vehicle dealership in, or relocate an existing

desires to establish an additional dealership, notice must be forwarded to the Dealers Board and to each franchisee or dealership marketing the same line of vehicles in the relevant market area. Ford complied with this statutory requirement and, after three Lincoln-Mercury dealers filed protests, a hearing was conducted as required by R.C. 4517.57. Ultimately, the Dealers Board denied Ford's franchise proposal, thus prohibiting Ford from establishing a new Lincoln-Mercury dealership in the proposed market area pending further review. See R.C. 4517.50(C).

When the Registrar received notification of the denial of Ford's franchise proposal, he was, in effect, legally precluded from issuing a dealership license to relator pursuant to R.C. 4517.12(I).[3] That section imposes on the Registrar a duty to deny an application for a motor vehicle dealership license if the applicant "[h]as no established place of business that * * * will be used for the purpose of selling * * * motor vehicles at the location for which application is made." Thus, pending appeal, the denial of

---

motor vehicle dealership at a location in, a relevant market area where the same line-make of motor vehicle is then represented, the franchisor shall first give notice in writing to the motor vehicle dealers board and to each franchisee in such line-make in the relevant market area of the franchisor's intention to establish an additional dealership in, or relocate an existing dealership at a location in, that market area. Within fifteen days after receiving the notice, or within fifteen days after the conclusion of any appeal procedure provided by the franchisor, whichever is later, the franchisee of the same line-make may file with the board a protest against the establishment or relocation of the dealership. When such a protest has been filed, the board shall inform the franchisor that a timely protest has been filed, that a hearing is required pursuant to section 4517.57 of the Revised Code, and that the franchisor shall not establish or relocate the dealership until the board has held the hearing required by that section, nor establish or relocate the dealership thereafter if the board determines there is good cause for not permitting the dealership to be established or relocated. When more than one protest is filed against the establishment or relocation of the same dealership, the board may consolidate the hearings to expedite disposition of the issue.

"(B) For the purposes of this section, the reopening in a relevant market area of a motor vehicle dealership that has not been in operation for one year or longer shall be considered to be the establishment of an additional motor vehicle dealership.

"(C) No franchisor shall establish an additional motor vehicle dealership or relocate an existing dealership before the holding of a hearing on any protest filed under this section, and no franchisor shall establish or relocate such a dealership after the hearing if the board determines there is good cause for not permitting the dealership to be established or relocated.

"(D) Division (A) of this section does not apply to the relocation of an existing dealership when the new location is less than one mile from the existing location and is in the same relevant market area as that location."

[3] R.C. 4517.12 provides in part:

"The registrar of motor vehicles shall deny the application of any person for a license as a motor vehicle dealer, motor vehicle leasing dealer, or motor vehicle auction owner and refuse to issue him the license if the registrar finds that the applicant:

"* * *

"(I) Has no established place of business that, where applicable, is used or will be used for the purpose of selling, displaying, offering for sale, dealing in, or leasing motor vehicles at the location for which application is made * * *."

Ford's franchise proposal by the Dealers Board effectively extinguished any clear legal duty owed to relator by the Registrar to issue a dealership license. Stated somewhat differently, relator's clear legal right to a dealership license was contingent upon Ford's having first secured franchise approval from the Dealers Board. When Ford failed to succeed in its effort, R.C. 4517.12(I) mandated that the Registrar deny relator a dealership license. Accordingly, if the Registrar was under any clear legal duty, it was to deny relator the license.[4]

We therefore conclude that in the absence of a showing by relator of a clear legal right to the relief sought or respondents' clear legal duty to perform the requested act the writ prayed for must be denied. Cf. *State, ex rel. Taxpayers League of North Ridgeville,* v. *Noll* (1984), 11 Ohio St. 3d 190; *State, ex rel. Sheppard,* v. *Koblentz* (1962), 174 Ohio St. 120 [21 O.O.2d 384]. Moreover, relator's complaint is, in reality, a collateral attack upon the decision of the Dealers Board denying Ford's franchise proposal, which asserts as grounds for the issuance of the writ two of the precise errors assigned by Ford in its appeal to the court of common pleas.[5] It is well-settled, however, that such collateral attacks cannot be maintained by an action in mandamus. Accord *State, ex rel. Stanley,* v. *Cook* (1946), 146 Ohio St. 348 [32 O.O. 419]; *State, ex rel. Holland,* v. *Struble* (1937), 132 Ohio St. 431 [8 O.O. 281].

For the foregoing reasons, relator's request for the issuance of a writ of mandamus is denied.

*Writ denied.*

---

[4] The thrust of relator's complaint centers not upon the denial of the dealership license, but instead upon the decision of the Dealers Board on reconsideration denying Ford's franchise proposal. Specifically, relator maintains the decision of the Dealers Board was unlawful since (1) the time period for exercising reconsideration had expired, and (2) David Mainwaring's prior involvement with automobile dealers statewide caused him to be biased in favor of the protesting dealers. These precise issues, however, were assigned as error by Ford in its appeal to the court of common pleas taken pursuant to R.C. 119.12. On April 16, 1985, the court of common pleas concluded that the Dealers Board had lost jurisdiction to reconsider its initial decision approving Ford's proposed franchise, and that the case should be remanded to the board with instructions to reinstate the March 30, 1984 order denying the protests. A stay of execution was subsequently sought and received, and the case, having been appealed on April 23, 1985, to the Court of Appeals for Franklin County, is currently before that court for consideration in case No. 85AP-327.

The question necessarily arises that if Ford was limited to an appeal under R.C. 119.12 to contest the lawfulness of the reconsideration exercised by the Dealers Board and its subsequent decision to deny the franchise, should relator be allowed to maintain an action in mandamus in an attempt to thwart the avenue of review provided under R.C. 119.12 and have this court outrun the lower court to a decision on the propriety of the actions of the Dealers Board? Clearly, this question must be answered with the negative, for to sustain relator's contentions would be to sustain collateral attacks upon proceedings properly instituted in the court of common pleas pursuant to R.C. 119.12, whether by the party initiating such a proceeding or, as in this case, by an entity which is not a party to the pending proceeding.

[5] See fn. 4.

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

CELEBREZZE, C.J., concurring in judgment only. I concur in today's result, but deem it appropriate to add the following observations concerning an issue raised in this action but not fully addressed in the majority opinion.

In support of its complaint, relator alleges misconduct, bias, prejudice and possibly a financial stake in the outcome by one of the members of the dealer's board (David Mainwaring) who cast a vote against franchisor Ford's proposal.[6]

Relator contends that Ford may be barred from raising the issue of Mainwaring's prejudice in its R.C. Chapter 119 appeal as it involves facts and assertions outside the record. Relator points out that appellees in the R.C. Chapter 119 appeal are vigorously asserting that no issues of prejudice may be heard in that forum since R.C. Chapter 119 appeals are limited by statute to the record of the protest proceeding below. Relator therefore argues that the instant action provides the only certain forum where Mainwaring's alleged bias may be considered.

It is a fundamental due-process requisite that administrative adjudications must be fair and open. *Ohio Bell Tel. Co.* v. *Pub. Util. Comm.* (1937), 301 U.S. 292. Fraud, collusion and mistake have all been recognized as grounds for reversal of an administrative decision on appeal. *Powell* v. *Young* (1947), 148 Ohio St. 342, 353 [35 O.O. 322]; *Brannon* v. *Bd. of Edn.* (1919), 99 Ohio St. 369, paragraph three of the syllabus; *State, ex rel. Gongwer,* v. *Graves* (1914), 90 Ohio St. 311, paragraph three of the syllabus. The right to a fair and impartial decision-maker is one of the most fundamental rights of a party in a proceeding and it is well-settled that the adjudicator may not have a financial stake in the outcome. *Gibson* v. *Berryhill* (1973), 411 U.S. 564; *Ward* v. *Village of Monroeville* (1972), 409 U.S. 57; *State, ex rel. Basista,* v. *Melcher* (1963), 118 Ohio App. 37, at

---

[6] R.C. 4517.30 provides that of the eleven members of the Motor Vehicle Dealers Board, "[t]hree shall represent the public * * *." As regards which members of the board may conduct a protest hearing, R.C. 4517.57(D) states "[o]nly the public members of the board * * * shall participate in, deliberate on, hear, consider, or decide any matter involving a protest * * *."

Relator argues that Mainwaring can not properly be a voting public member of the board because he is inextricably linked to the protesting dealers and their member organizations, the Ohio Automobile Dealers Association ("OADA"). Relator draws our attention, *inter alia,* to stipulations which demonstrate Mainwaring was a past vice-president of the OADA; a former lobbyist for that association; past president and presently owns a portion of the Dealers Alliance Corporation ("DAC") (DAC sells liability insurance to automobile dealers); and that one of the protesting dealers is a customer of DAC.

47. See, also, *Tumey* v. *Ohio* (1927), 273 U.S. 510. In light of the above precedent, it would appear that if relator, in an appropriate setting, could prove the alleged prejudice due to a stake in the outcome of member Mainwaring, the decision by the dealers board would be voidable. The resulting issue is therefore whether the allegations presented herein are sufficient to consider the merits of the mandamus complaint or whether the statutorily prescribed legal remedies concerning Ford's appeal are sufficient to protect relator's interest.

In this regard, it has been held that review of an administrative decision does not proceed as a trial *de novo, Lies* v. *Veterinary Medical Bd.* (1981), 2 Ohio App. 3d 204, 207, and can not ordinarily and automatically consider matters not part of the record, *City Products Corp.* v. *Bd. of Liquor Control* (1958), 106 Ohio App. 494, 496; and is limited to a decision as to whether the order is supported by reliable, probative and substantial evidence and not whether a gross abuse of discretion is present. *In re Hennis* (App. 1977), 7 O.O. 3d 170.

However, R.C. 119.12 grants the court discretion to admit new evidence outside the record. The "new" evidence does not refer to events subsequent to the hearing but rather additional evidence which is "newly discovered and could not * * * have been ascertained prior to the hearing * * *." R.C. 119.12; *In re Lane Nursing Home* (C.P. 1976), 5 O.O. 3d 146, 148. Additionally, the scope of review for the court of common pleas includes a mandate to determine if the order "* * * is in accordance with law." R.C. 119.12. As noted above, it is settled that a hearing which does not comport with fundamental due process is unconstitutional. Accordingly, it would not be "in accordance with the law." While abuse of discretion may not be within the scope of review under R.C. 119.12, certainly the issue as to whether the agency had properly conducted an unbiased proceeding would be. See, also, *Gibraltar Mausoleum Corp.* v. *Cincinnati* (1981), 1 Ohio App. 3d 107, at 110; *State, ex rel. Helsel,* v. *Bd. of County Commrs.* (1948), 83 Ohio App. 388, 392 [38 O.O. 347].

The courts in the pending R.C. Chapter 119 appeal may find that the evidence of prejudice is not newly discovered or does not rise to a level whereby the hearing was not conducted in accordance with law. Nevertheless, the potential for such an adverse outcome is an insufficient basis to support relator's contention that the court of common pleas is not the appropriate forum to entertain an appeal from an administrative order pursuant to R.C. 119.12. It is possible that the courts will ultimately find in favor of Ford on other grounds, grant the relief requested, or address the issues herein presented on the merits. In any event, Ford's R.C. Chapter 119 appeal is the appropriate vehicle to raise a challenge to the board's reconsideration and order.