OPINION
Defendant-Appellant, Riverdale Local School District ("Appellant"), appeals a judgment by the Hancock County Common Pleas Court reversing a Riverdale Board of Education ("Board") decision to adopt the referee's recommendation and terminate the teaching contract of Plaintiff-Appellee, Cheryl Coolidge ("Coolidge") following an R.C. 3319.16
administrative hearing.
On appeal, Appellant claims the trial court abused its discretion in determining that the Board arbitrarily decided not to extend Coolidge's assault leave beyond sixty days and that the trial court erred by reversing the Board's decision to terminate Coolidge's teaching contract on the basis that the Board provided notice of its intent to begin considering Coolidge's termination prior to the expiration of a valid leave of absence. Because decisions to extend assault leave are within the Board's discretion and the Board provided reasonable justification for its denial, the trial court abused its discretion by finding that the Board acted arbitrarily. Additionally, while the Board gave notice that it was considering Coolidge's termination prior to the expiration of her leave alternatives, no formal action was taken until the conclusion of an administrative hearing conducted well beyond the exhaustion of her excused leave; therefore, the Board's decision was supported by the evidence and as such, the trial court abused its discretion by reversing the same.
The facts leading to this appeal are as follows. On October 22, 1998, Coolidge, a second grade teacher employed by Appellant, was injured in an altercation with an eight-year-old student in her second grade class. Coolidge returned to work the following morning but left early to attend a doctor's appointment made in response to the injuries sustained the previous day.
Thereafter, Coolidge requested thirty days of paid assault leave, pursuant to the Board's negotiated agreement with the Riverdale Education Association, which was granted by the Board. Upon expiration of the thirty-day period, Coolidge requested an extension of the assault leave. In response to Coolidge's request, the Board extended her assault leave for a second thirty-day period, which expired on January 15, 1999.
Beginning on January 16, 1999, Coolidge used her accumulated paid sick leave and remained absent from work until its expiration on May 11, 1999. Prior to exhausting her sick leave, however, Coolidge requested, on February 23, 1999, that the Board grant her a second extension of assault leave. The superintendent recommended that Coolidge's request not be granted, and the Board concurred, denying Coolidge's request. Coolidge did not appeal this determination.
Upon the expiration of her sick leave, Coolidge began to exhaust uncompensated leave, which according to the Board's policies could extend up to one school year. Coolidge never applied for uncompensated leave as contemplated by the Board's policies; however, the Board unilaterally placed her on such leave after the expiration of her sick leave. Despite phone calls to Coolidge by the superintendent in order to determine her plans for the 1999-2000 school year, Coolidge did not respond; however, three days before the first day of school her husband explained to the superintendent that she would not be returning. Nonetheless, the Board continued Coolidge's unpaid leave until its expiration on May 10, 2000.
On April 20, 2000, prior to the completion of her unpaid leave, Coolidge received notice that the Board intended to consider the termination of her teaching contract because she had not returned to work since October 26, 1998, she had exhausted all available leave, and she continued to be unable to fulfill her teaching contract; moreover, the Board provided notice of her rights according to R.C. 3319.16 and 3319.161. Pursuant to R.C. 3319.16, Coolidge requested a hearing before an administrative referee; this being the first communication from Coolidge since September 27, 1999, despite requests that Coolidge keep the superintendent abreast of her recovery.
The termination hearing commenced on August 1, 2000, and the referee recommended that the Board terminate Coolidge's contract because she had exhausted all available leave and that her failure to return without justifiable absence provided "good and just cause" for termination of her contract pursuant to R.C. 3319.16. After considering the referee's recommendation, the Board terminated Coolidge's contract on September 18, 2000.
Following her termination, Coolidge appealed the Board's decision to the Hancock County Common Pleas Court. The trial court determined that the decision of the Board was erroneous because it should not have denied Coolidge's request for additional assault leave, and the Board prematurely gave notice to Coolidge of their intention to consider terminating her teaching contract. Consequently, the trial court ordered Coolidge's contract be reinstated.
From this decision, Appellant appeals asserting one assignment of error for our review.
 Assignment of Error I
"The trial court erred to the prejudice of Defendant-Appellant in reversing the Riverdale Board of Education's decision to terminate Plaintiff-Appellee's continuing teaching contract."
When determining whether a board of education properly terminated a teacher's contract, a trial court may reverse a board decision "where it finds that such order is not supported by or is against the weight of the evidence."[1] Pursuant to R.C. 3319.16, appeals to common pleas courts in such cases "shall be an original action" where "[t]he court shall examine the transcript and record of the hearing and shall hold such additional hearings as it deems advisable, at which it may consider other evidence in addition to the transcript and record."[2] While an R.C.3319.16 appeal to a common pleas court does not include a right to a trial de novo,[3] the statutory language does empower the court to weigh the evidence.
On the contrary, an appellate court's role is more limited.[4]
Absent an abuse of discretion on the part of the trial court, an appellate court may not reverse a trial court decision in such a case.[5]
While Appellant's overriding contention is that the trial court improperly reversed the Board's decision to terminate Coolidge's teaching contract, within Appellant's single assignment of error a distinct issue is presented, which we will address separately. Appellant claims that the trial court substituted its judgment for that of the Board when it determined that the Board's refusal to extend Coolidge's assault leave beyond sixty days was an arbitrary and unreasonable exercise of discretion.
Pursuant to a negotiated agreement with the Riverdale Education Association, the Board is bound to allow thirty days of paid assault leave when employees are physically disabled from an assault occurring in relation to school activities and the employee provides sufficient medical documentation in support of their request; however, any extension of the initial period is within the Board's discretion.
Ohio boards of education are vested with the power and discretion to manage their schools; therefore, a trial court is restrained to a deferential standard when deciding whether a board of education acted properly in light of its own policies.[6] Consequently, a court may only modify the action of a board of education if the board's action amounts to an abuse of discretion.[7] An abuse of discretion implies an attitude that is unreasonable, arbitrary, or unconscionable.[8] A decision is unreasonable if no sound reasoning process would support the decision.[9]
The trial court determined that the Board acted arbitrarily and unreasonably when it denied extension of Coolidge's assault leave beyond sixty days. This sixty-day period, however, was comprised of the initial thirty-day period as mandated in the Board's negotiated agreement and an additional thirty-day discretionary extension granted to Coolidge by the Board. The trial court based its reasoning on the fact that the superintendent's only justification for recommending to the Board that they deny the second extension was to avoid setting a precedent for the future.
A review of the superintendent's testimony reveals that the potential precedential effect was only part of her justification. She also stated that the initial thirty days in addition to the thirty-day extension was "reasonable" and "fair" to Coolidge at that time. Moreover, the superintendent indicated that she could not find where the Board had ever granted extensions beyond that amount of time in the past. Notably, the trial court makes no mention of the fact that Coolidge did not request the second extension until over a month had past since the conclusion of the initial extension, and Coolidge did not support her request with medical evidence as contemplated by the Board's mandates concerning assault leave.
For these reasons, we find that the trial court did not properly defer to the Board's decision; as such, the evidence adduced at the administrative hearing supports that the Board's application of their policy concerning assault leave was not an abuse of discretion.
We now turn to the issue of whether the trial court improperly reversed the Board's decision to terminate Coolidge's employment contract. The crux of the trial court's decision turns upon the Board's consideration of terminating Coolidge prior to the exhaustion of her afforded leave of absence, despite the fact that Coolidge was not actually terminated until several months after all allowable leave was extinguished.
R.C. 3319.16 controls the termination procedures for teaching contracts and states, in pertinent part, the following:
 "The contract of any teacher employed by [a] board of education * * * may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of his contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after the receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing * * * before a referee * * *."
"* * *
 "* * * After consideration of the referee's report, the board, by a majority vote, may accept or reject the referee's recommendation on the termination of the teacher's contract. * * * Any order of termination of a contract shall state the grounds for termination. If the decision, after hearing, is against termination of the contract, the charges and the record of the hearing shall be physically expunged * * *."
According to R.C. 3319.16, the furnishing of written notice to a teacher of a board of education's intention to consider termination does not amount to formal action of termination. Moreover, as framed by R.C.3319.16, when a teacher properly requests a hearing before a referee, formal action of termination by a board of education cannot commence until its conclusion, and boards of education must consider the findings and recommendation of the referee.
With these concepts in mind, we find that the Board properly followed the mandates of R.C. 3319.16. Coolidge was given notice of the Board's intention to consider her termination, and she was afforded a hearing, the results of which were considered by the Board prior to her termination. Moreover, while the Board began considering Coolidge's termination a few weeks prior to the exhaustion of her permitted unpaid leave period, this did not prejudice her rights afforded by R.C. 3319.16
because no formal action to terminate her contract was taken until after the administrative hearing. The hearing did not occur until August 1, 2000; over two months after all leave had expired, and Coolidge was not terminated until September 18, 2000.
Accordingly, we find that the trial court abused its discretion by finding that the Board's decision to terminate Coolidge was not supported by the evidence presented. Coolidge had already taken advantage of every available avenue for excused absence from work that is allowed by the Board; therefore, upon her unwillingness to return after the expiration of leave, the Board had "good and just cause" to terminate her contract.[10]
Accordingly, Appellant's assignment of error is hereby sustained.
Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment reversed and remanded.
HADLEY, J., concurs.
SHAW, P.J., dissenting.
[1] Graziano v. Bd. of Edn. of Amherst Exempted Village School Dist. (1987), 32 Ohio St.3d 289, 293, 42 L.Ed. 353, 513 N.E.2d 282, quotingHale v. Bd. of Edn. (1968), 13 Ohio St.2d 92, 42 O.O.2d 286,234 N.E.2d 583, paragraph one of the syllabus.
[2] R.C. 3319.16; Graziano, 32 Ohio St.3d at 293.
[3] Graziano, 32 Ohio St.3d at 293, citing Powell v. Young (1947),148 Ohio St. 342, 35 O.O. 322, 74 N.E.2d 261, paragraph one of the syllabus.
[4] Graziano, 32 Ohio St.3d at 294; Bertolini v. Whitehall City SchoolDist. Bd. of Edn. (2000), 139 Ohio App.3d 595, 605, 152 L.Ed. 259,744 N.E.2d 1245; Buie v. Chippewa Local School Dist. Bd. of Edn. (Sept. 13, 1995), Wayne App. No. 2924, discretionary appeal not allowed by (1996), 74 Ohio St.3d 1525, 108 L.Ed. 366, 660 N.E.2d 744.
[5] Id.
[6] Johnson v. N. Union Local School Dist. Bd. of Edn (2001),141 Ohio App.3d 354, 358, 155 L.Ed. 794, 750 N.E.2d 1233.
[7] Id., citing Rohrbaugh v. Elida Local Bd. of Edn. (1990),63 Ohio App.3d 685, 687-88, 70 L.Ed. 187, 579 N.E.2d 782.
[8] Cf. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
[9] AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
[10] R.C. 3319.16. Cf. Wynne v. South Point Local School Dist. Bd. ofEdn. (July 23, 1992), Lawrence App. No. 91CA15; Blair v. Milford ExemptedVillage School Dist. Bd. of Edn. (1989), 62 Ohio App.3d 424, 430-32,68 L.Ed. 1124, 575 N.E.2d 1190.