**BLAIR, Appellant and Cross–Appellee,**

**v.**

**MILFORD EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION, Appellee and Cross–Appellant.**

[Cite as *Blair v. Milford Exempted Village School Dist. Bd. of Edn.* (1989), 62 Ohio App.3d 424.]

Court of Appeals of Ohio,
Clermont County.

No. CA88–05–043.

Decided Feb. 6, 1989.

*Robert G. Byrom* and *Mary F. Lyell,* for appellant and cross-appellee.

*Dinsmore & Shohl, Harold S. Freeman* and *Jeffrey S. Shoskin,* for appellee and cross-appellant.

*Per Curiam.*

Plaintiff-appellant/cross-appellee, Patsy G. Blair ("Blair") appeals a decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendant-appellee and cross-appellant, Milford Exempted Village School District Board of Education ("board"). The board has filed a cross-appeal regarding the trial court's denial of a motion to dismiss predicated upon lack of subject matter jurisdiction.

Blair was employed by the board as a substitute bus driver for the school year 1980–1981. As a substitute driver, she worked on an "as needed" basis and was not entitled to a written employment contract. She substituted for a number of regular drivers between September 1981 and January 1982. Also, between her scheduled substitute routes, she worked as an aide to a bus driver transporting a handicapped student.

On January 26, 1982, Valerie Weber, a regular bus driver, requested a leave of absence from February 1 through May 3, 1982. Blair's supervisor assigned her to drive Weber's route until he "told her differently." She no longer would receive a phone call on days she was needed, but would report to drive Weber's route.

Blair drove Weber's route for most of the remaining days in the school year. However, she also drove the route of another regular driver, Carol Forthwith, for two weeks in March 1982. She also substituted on Barbara Lutes's route on several occasions. During these times, another substitute drove Weber's route. Blair also continued to work as an aide on the bus route for the handicapped.

On September 12, 1982, Blair voluntarily entered into her first one-year limited contract with the board which covered the 1982–1983 school year. As a result of this contract, she was assigned a regular bus route. During this year, she was absent 54.5 out of one hundred ninety-one work days due to medical reasons. Her poor attendance was noted on her 1982–1983 evaluation.

On May 2, 1983, Blair entered into her second one-year limited contract covering the 1983–1984 school year. On March 2, 1984, she was involved in a work-related accident where she slipped and fell on some ice and injured her back. She filed a claim for workers' compensation, which was not contested by the board. Due to her back injury, she was absent the remainder of the school year. She missed eighty-one out of one hundred ninety-one work days, for a variety of reasons including her injury. In her 1983–1984 evaluation, her supervisor again expressed concern about her attendance record.

On May 11, 1984, Blair entered into her third one-year limited contract covering the 1984–1985 school year. She did not commence work at the start of the year due to surgery related to her back injury. She missed 97.5 out of one hundred eighty work days for various reasons, including her back problems.

Blair's 1984–1985 evaluation contained seven "satisfactory," one "unsatisfactory" and seven "unable to evaluate" rankings. Her supervisor indicated that he was unable to evaluate her in these areas because of her absences

from work. Assistant Superintendent Loren Wilson recommended that her contract not be renewed.

Upon Blair's request, a special meeting was held on April 17, 1985. Blair was given an opportunity to explain her professional performance, her health conditions over the last three years, and why her contract should be renewed. Wilson clearly stated that the reason for his recommendation of nonrenewal was because of Blair's absentee record. On April 17, 1985, the board decided not to renew Blair's contract. On April 25, 1985, she received notice of this decision. Blair did not raise the issue of her "replacement credit" earned during 1981–1982 when she worked as a substitute either before or during the April 17 meeting, nor did she use the grievance procedure set forth in her union's collective bargaining agreement.

On October 7, 1985, Blair filed a complaint seeking a declaratory judgment that she was entitled to a continuing contract status and could not be terminated except for cause. On February 26, 1986, the trial court overruled the board's motion to dismiss on the grounds of lack of subject matter jurisdiction and failure to state a claim on which relief could be granted. On April 14, 1986, the trial court granted summary judgment in favor of the board on the basis of Blair's complaint. It again refused to dismiss the case for lack of jurisdiction. Blair filed a notice of appeal on May 27, 1988. The board filed a cross-appeal on the jurisdiction issue.

I

We will deal first with Blair's two assignments of error. Her first assignment of error states that the trial court erred in granting summary judgment because there were factual issues still in dispute that required resolution by the court. She also claims that even if there were no genuine issues of material fact, the court should have granted summary judgment in her favor. We find this assignment of error is not well taken.

R.C. 3319.081 provides the exclusive contract system for all nonclassified nonteaching employees. Newly hired regular nonteaching employees enter into limited one-year contracts. If such employees are rehired, they enter into limited two-year written contracts. R.C. 3319.081(A). These contracts are limited in the sense that a school board can unilaterally choose not to renew the nonteaching employee's contract at the end of the contractual period. R.C. 3319.083.

If the school board decides to renew an employee's contract at the end of the two-year period, that employee achieves continuing contract status. R.C. 3319.081(B). Once this status is achieved, the employee's contract can only be terminated for cause. R.C. 3319.081(C).

■ A person hired exclusively for the purpose of replacing a nonteaching school employee while that employee is on a leave of absence is not a regular nonteaching school employee. R.C. 3319.081(F). If such person is continued in employment he receives credit for his length of service with the school district during the replacement period. The credit is received in the form of a limited contract for one year or two years less the length of the replacement period. Subsequent reemployment is pursuant to the scheme set out in R.C. 3319.081. R.C. 3319.13.

■ Blair claims that she received replacement credit during the 1981–1982 school year when she drove Weber's route. Therefore, she entered into her first limited contract during that year and achieved continuing contract status sometime after her contract was renewed for the 1984–1985 school year. The board claims she was not hired as a replacement for Weber and did not receive credit for that period. Accordingly, Blair argues there is a factual dispute and summary judgment should not have been granted. We disagree.

■ Civ.R. 56(C) provides that summary judgment shall be granted if the motion and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment is inappropriate unless it appears that, after construing the evidence in a light most favorable to the motion's opponent, reasonable minds could come to but one conclusion and that conclusion is adverse to the motion's opponent.

The materials supporting and opposing the motion for summary judgment reveal the same set of facts. Blair was hired for the 1981–1982 year as a substitute driver on an "as needed" basis. She was described in the minutes of school board meetings as a substitute driver, along with several other employees. She was asked by her supervisor to drive Weber's route until further notice. Weber's route was not placed on the bulletin board for bidding, the normal procedure when another driver will be permanently assigned to the route. Blair did not drive Weber's route every day. She substituted for at least one other driver and continued to work as an aide on the route for the handicapped.

Blair concedes these facts. She only claims that they entitle her to be considered a replacement for the purpose of R.C. 3319.13. Her argument involves a question of statutory construction, which is a matter of law. There is no genuine issue of material fact and summary judgment was proper in this case.

Blair next contends that even if there was no genuine issue of material fact, she was entitled to judgment as a matter of law. We disagree. Blair was

hired solely as a substitute for 1981–1982 and was not given a written employment contract. As a substitute, she was not a regular nonteaching employee. *Wilson v. Hubbard Exempted Village School Dist. Bd. of Edn.* (June 24, 1983), Trumbull App. No. 3129, unreported, 1983 WL 6168. The fact that she drove Weber's route does not alter her status as a substitute.

Both R.C. 3319.081(F) and 3319.13 define a replacement as someone hired *exclusively* for the purpose of replacing a regular nonteaching employee who is on leave. The statute's language is clear and unambiguous. Because it is clear, unequivocal and definite, interpretive effort is at an end and the statute must be applied as written. *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 369, 23 O.O.3d 341, 343, 433 N.E.2d 142, 145, citing *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413. Since she was not hired exclusively as a replacement, Blair cannot receive replacement credit.

Blair cites no authority which could lead us to a different interpretation. She relies on *Kelly v. Green Loc. School Dist. Bd. of Edn.* (June 30, 1982), Scioto App. No. 1429, unreported, 1983 WL 3202, as support for her position. In that case, the court of appeals found that a bus driver was entitled to replacement credit. However, *Kelly* is distinguishable from the case at bar as there was no allegation that the bus driver was a substitute. The court in *Kelly* stated that the bus driver "began her employment * * * as a replacement for a regular bus driver on leave." The driver in *Kelly* squarely met the requirements of R.C. 3319.13.

In fact, Blair's theory was expressly rejected on exactly the same set of facts in *Robinson v. Symmes Valley Loc. School Dist. Bd. of Edn.* (Feb. 16, 1987), Lawrence App. No. 1806, unreported, 1987 WL 6761. In that case, the bus driver also conceded he was hired as a substitute. The court upheld the trial court's granting of summary judgment to the school board stating, "[a]side from appellant's bare assertion he replaced one bus driver on leave, the record is devoid of evidence he was anything but an as-needed substitute." *Id.*

Additionally, a nonteaching employee cannot achieve continuing contract status during the period of a limited contract voluntarily entered into by the employee where eligibility for the continuing contract did not exist at the outset of the period covered by the limited contract. *Shankle v. Ontario Loc. School Dist. Bd. of Edn.* (1977), 54 Ohio App.2d 41, 8 O.O.3d 50, 374 N.E.2d 648. Blair voluntarily entered into all three limited contracts. She did not raise the issue of replacement credits at any time when entering into these contracts. If she was ever entitled to continuing contract status, it would have occurred sometime during the 1984–1985 school year. Eligibility would

not have existed at the time she entered into the contract for that year. She cannot now argue that her status changed during that period. Accordingly, the first assignment of error is overruled.

Blair's second assignment of error states that the trial court erred in granting summary judgment to the board because nonrenewal of her contract was in retaliation for her filing a workers' compensation claim. She claims that since the reason for nonrenewal, absenteeism, was almost totally related to and indistinguishable from the injury for which she filed the claim, the board failed to meet its burden to be entitled to summary judgment as a matter of law. We find this assignment of error is not well taken.

R.C. 4123.90 provides that no employer shall discharge, demote, reassign or take any punitive action against any employee because such employee filed a claim under the workers' compensation act. An employee may assert a claim under this statute only if he alleges and proves that he was demoted or dismissed, not because of his job-related injury, but rather because of his pursuit of a workers' compensation claim. *Bea v. Revlon Realistic Professional Products* (Nov. 27, 1985), Hamilton App. No. C–840926, unreported, 1985 WL 8845. Accord *Gallaher v. Western–Southern Life Ins. Co.* (Dec. 10, 1986), Hamilton App. No. C–860062, unreported, 1986 WL 14063; *Baker v. Culligan Water Conditioning* (Oct. 2, 1986), Clark App. No. CA2133, unreported, 1986 WL 11119; *Laithwaite v. Pizza Hut Hallrich Co.* (Aug. 13, 1986), Mahoning App. No. 85CA98, unreported, 1986 WL 8924; *Swanson v. Ohio Bell Tel. Co.* (Dec. 4, 1980), Cuyahoga App. No. 983,232, unreported.

In *Brown v. Whirlpool Corp.* (Sept. 1, 1987), Marion App. No. 9–86–20, unreported, 1987 WL 16261, the employee was discharged due to her excessive absenteeism. The record showed that she was absent for a variety of reasons, including an injury for which she filed a workers' compensation claim. The court held that there was no evidence the discharge was retaliatory, stating that the employer "had good and sufficient cause to terminate the employment of appellant for frequent and continued failure to report for work over a long period and after repeated warnings * * *" *Id.* It went on to state "R.C. 4123.90 does not prohibit a discharge for just and legitimate termination of employment. It does not suspend the rights of an employer, nor insulate an employee from an otherwise just and lawful discharge." *Id.*

The present case is similar to *Brown, supra.* Blair has not presented any facts which would support a claim for retaliatory discharge. The undisputed reason for nonrenewal of her contract was excessive absenteeism, a portion of which was related to her back injury. The board had good and sufficient cause for the nonrenewal. Blair was absent for over half of the working days throughout the period of her three limited contracts. Her supervisors re-

peatedly expressed concern over her attendance record, yet they sympathized with her health problems and twice renewed her contract. The board did not contest the workers' compensation claim and renewed her contract for 1984–1985 shortly afterwards. It was only after three years of continued absences that they realized they could not grant her a continuing contract.

There is no genuine issue of material fact. Reasonable minds could come to but one conclusion: Blair's contract was not renewed for good business reasons and not in retaliation for her workers' compensation claim. Because summary judgment in favor of the board was properly granted, Blair's second assignment of error is overruled.

## II

■ In the cross-appeal, the board presents two assignments of error. The first assignment of error states that the trial court erred in finding it had subject matter jurisdiction over Blair's cause of action. The board argues that Blair failed to pursue the available statutory remedy expressly set forth in R.C. 3319.081(C). Therefore, the trial court lacked jurisdiction to render a declaratory judgment. The board further argues that Blair's claim is time barred by the express ten-day limitation period set forth in the statute. We find this assignment of error is not well taken.

R.C. 3319.081(C) provides the procedure to be followed when the contract of an employee who has achieved continuing employment status is terminated for cause.

" * * * The action of the board of education terminating the contract of an employee * * * shall be served upon the employee by certified mail. Within ten days following receipt of such notice by the employee, the employee may file an appeal, in writing, with the court of common pleas of the county in which such board is situated * * *."

It is true, as the board contends, that one must first resort to special statutory procedures prior to being entitled to declaratory relief. *Schomaeker v. First Natl. Bank of Ottawa* (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530. However, in this case, Blair does not fall within the requirements of the statute.

■ The cases construing R.C. 3319.081(C) involve an employee who was, without dispute, entitled to continuing contract status, but contests a disciplinary action by the board. See, *e.g.*, *Mayes v. Western Brown Loc. Bd. of Edn.* (Jan. 20, 1987), Brown App. No. CA86–08–012, unreported, 1987 WL 5506. The statutory language itself contains an assumption that an employee is already entitled to this status before use of the appeal procedure becomes

necessary. The legislative intent is to satisfy constitutional due process. It must first be determined that an employee has an entitlement to continued employment before a property right attaches requiring due process of law. See *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494; *Arnett v. Kennedy* (1974), 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15.

In this case, the entire dispute centers around whether Blair has achieved continuing contract status at all, not whether she was terminated for cause. There has been no determination of whether she has a property right which must be safeguarded through the statutory procedures. Thus, R.C. 3319.-081(C) is not applicable and Blair's claim is not barred by the ten-day time limitation.

The more appropriate statutory authority is R.C. 3319.083, the provision dealing with nonrenewal of limited contracts. Under this statute, the board simply has to notify the employee of its intent not to renew an expired contract. Since there is no property right involved under this statute, there is no appeals procedure.

R.C. 3319.083 is very similar to R.C. 3319.11, the provision for nonrenewal of teachers' limited contracts. The action of a board of education in deciding not to reemploy a school teacher whose limited contract is due to expire is not a quasi-judicial proceeding because there is no requirement that the board provide a teacher with notice of, or opportunity to be heard at, the meeting where his employment is being considered. Therefore, that action is not subject to judicial review under R.C. 2506.01, the provision for appeals from decisions of an agency of any political subdivision. *DeLong v. Southwest School Dist. Bd. of Edn.* (1973), 36 Ohio St.2d 62, 65 O.O.2d 213, 303 N.E.2d 890. There is no administrative appeal available and no adequate remedy at law for a teacher to appeal a decision of the school board not to renew a limited contract. Therefore, that teacher may properly commence an action for a declaratory judgment to determine contract status. *State, ex rel. Stec, v. Lorain City School Dist. Bd. of Edn.* (1974), 49 Ohio App.2d 101, 3 O.O.3d 160, 359 N.E.2d 445.

The same principles apply to nonteaching employees. R.C. 3319.083 contains no requirement of notice of or opportunity to be heard at the meeting of the school board making the decision not to reemploy. Because it is not a quasi-judicial proceeding, there is no avenue for review of the board's decision. Therefore, a declaratory judgment action is appropriate and the common pleas court has jurisdiction to determine the issue. Accordingly, the board's first assignment of error is overruled.

■ The board's second assignment of error states that the trial court erred in finding it had jurisdiction over Blair's cause of action. The board argues that the trial court lacked jurisdiction because Blair failed to exhaust the remedies provided for in the collective bargaining agreement between her union and the school board. We find this assignment of error is not well-taken.

The collective bargaining agreement defines a grievance as "a complaint involving the alleged violation, misinterpretation or misapplication of a written provision of the negotiated consensus * * *." The grievance procedure provided for in the agreement is a five-step process culminating in "advisory arbitration." The decision of the arbitrator is "advisory and not binding" on the school board. The agreement also states that the employer's discharge power "shall be exercised with due regard for the rights of the employees."

The board argues that because Blair essentially claims that the board exercised its discharge power without due regard for her rights, she could have used the grievance procedure. Since the grievance procedure was available, she had a duty to use it before filing an action in common pleas court. We disagree.

Blair's complaint seeks a determination of her contract status under the applicable statutes. There is no alleged violation of the "negotiated consensus." The discharge power described in the collective bargaining agreement is "discharge for cause." Nowhere does the agreement mention the determination of contract status. The reference to this power "with due regard for employee's rights" holds little applicability to this case. Since the board took the position that Blair had not achieved continuing contract status, she would have no due process rights. Requiring Blair to file a grievance before a conclusive determination of her status was made does not make sense. Until such a determination is made, she has no rights which can be given due regard under the collective bargaining agreement.

■ Additionally, it is not mandatory that an employee use the grievance procedure when that procedure ends in nonbinding arbitration. R.C. 4117.-10(A) provides that if a collective bargaining agreement provides for a final and binding arbitration of grievances, public employers, employees and employee organizations are subject solely to that grievance procedure. Neither the State Personnel Board of Review nor the Civil Service Commission has jurisdiction to determine appeals relating to matters that were subject to a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about the matter, the public employer and employees are subject to all state laws pertaining to terms and conditions of employment for public employees. R.C. 4117.03(A)(5) provides that public

employees have a right to present grievances and have them adjusted without the intervention of the bargaining representative. The language of these provisions, construed together, means "that unless the agreement provides for final and binding arbitration, the public employer and employee, although subject to a nonbinding grievance procedure, nevertheless are 'subject to all applicable state or local laws' in their methodology of settling disputes." *Combs v. Stark Cty. Area Joint Vocational School Dist. Bd. of Edn.* (Aug. 13, 1985), Stark App. No. CA–6612, unreported, 1985 WL 6077.

Ohio law does not require employees to pursue advisory arbitration prior to seeking a judicial determination of rights. " * * * Judicial determination is required as a matter of law if the parties seek to have their disputes *settled*." (Emphasis *sic*.) *Id.* at 10. Accordingly, failure to pursue grievance procedures is not a bar to a common pleas court determination of Blair's rights. The board's second assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and YOUNG, JJ., concur.