**NEWTON**

v.

**OHIO DEPARTMENT OF MENTAL HEALTH.**

Court of Claims of Ohio.

No. 95–04327.

Decided Jan. 8, 1997.

68

*Thomas P. Aldrich III,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Larry Y. Chan,* Assistant Attorney General, for defendant.

DEAN STRAUSBAUGH, Judge.

The above-captioned case was scheduled for trial on April 22, 1996. Neither plaintiff, Charles L. Newton, nor his counsel appeared for trial. The court overruled defendant's motion to dismiss plaintiff's complaint and ordered that the case be continued to April 23, 1996. Plaintiff and his counsel again failed to appear for trial. Defendant made an oral motion for default judgment. On April 23, 1996, the court dismissed plaintiff's case with prejudice for want of prosecution.

On April 26, 1996, plaintiff filed a Civ.R. 60(B) motion for relief from judgment, citing an original clerical error and subsequent illness as reasons for not appearing at trial. On May 16, 1996, the court issued an order granting plaintiff's motion for relief from judgment and rescheduling the trial.

On June 5, 1996, the court conducted a trial in this matter on the sole issue of liability. At trial, defendant's counsel stated that he had not received plaintiff's motion for relief from judgment until two days prior to the court's entry on May 14, 1996, which therefore prevented him from having an opportunity to respond to the motion. After reviewing plaintiff's motion and supporting documentation, as well as defendant's argument at trial and in its post-trial brief, the court OVERRULES defendant's objection to the filing of the Civ.R. 60(B) motion and subsequent court order. The court finds sufficient evidence existed to support the granting of plaintiff's motion.

In his complaint, plaintiff alleges that his employment with defendant was wrongfully terminated and that he was the subject of racial discrimination.

Plaintiff was employed at Cleveland Psychiatric Institute ("CPI") as a therapeutic program worker from March 22, 1982 to September 13, 1995. Plaintiff was one of 243 black employees at CPI in 1995. The total work force included 371 employees, 106 of whom were white. Plaintiff was a member of the Ohio Civil Service Employees Association, AFSCME ("OSCEA"), which maintained a collective bargaining agreement with the Department of Mental Health and represented all similarly positioned employees.

On August 30, 1994, plaintiff was terminated by defendant for neglect of duty as a result of a "verbal outburst or engaging in a heated argument and threatening a supervisor." Gloria Kamara, plaintiff's supervisor at the time, who was also black, testified that during an extended argument on June 26, 1994, regarding approval of leave time, plaintiff returned to her office a third time and in a loud and angry manner stated, "That's why people come back to places like this with their .357 magnums!"

Following plaintiff's termination, he filed a union grievance under his union contract as a result of disciplinary actions taken against him and pursuant to other terms and conditions of employment within the contract.

Under the grievance procedure provided for by Article 25 of the union contract, plaintiff was entitled to and did seek binding arbitration on April 20, 1995. As a result of the arbitration process, plaintiff was reinstated to his position as a therapeutic program worker, and his termination was modified to a thirty-day suspension with back pay pursuant to the arbitrator's May 23, 1995 decision. Plaintiff filed this complaint alleging breach of contract and racial discrimination on March 31, 1995, prior to arbitration.

After plaintiff returned to work, he was charged with the sexual harassment of two female employees. In addition, he was charged with four felony counts of gross sexual imposition in the Cuyahoga County Court of Common Pleas. Plaintiff was placed on administrative leave while the criminal charges were pending. Plaintiff's employment was eventually terminated by defendant after pleading guilty to two counts of attempted gross sexual imposition.

As a result of his second termination, plaintiff filed a grievance, which resulted in a settlement agreement with defendant. Pursuant to the settlement agreement, plaintiff agreed to resign, effective September 13, 1995, to accept $1,000 as a settlement, and to waive any and all rights that he then possessed or which he might subsequently possess, including the right to resort to an administrative appeal or the institution of legal action.

Plaintiff's first and second causes of action involve a breach of his employment contract and a subsequent breach of the union arbitration agreement. Plaintiff alleges that he was unfairly and improperly terminated on August 30, 1994. Furthermore, plaintiff contends that even though he was later reinstated with back pay pursuant to the arbitration agreement, he still lost income during the proceedings.

Plaintiff was a member of OCSEA, the union that represented employees such as plaintiff at CPI pursuant to a collective bargaining agreement. As a member of the union, plaintiff was governed by the grievance procedure in the collective bargaining agreement between the Department of Mental Health and OCSEA, which provided for final and binding arbitration.

Plaintiff fully availed himself of the union grievance remedy after he was initially discharged in August 1994. His termination was modified to a thirty-day suspension, and he was reinstated with back pay and benefits.

■ R.C. Chapter 4117 establishes a framework for the resolution of public sector labor disputes by creating procedures and remedies for the vindication of those rights. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of*

*Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87. "R.C. 4117.10(A) provides that if a collective bargaining agreement provides for a final and binding arbitration of grievances, public employers, employees and employee organizations are subject solely to that grievance procedure." *Blair v. Milford Exempted Village School Dist. Bd. of Edn.* (1989), 62 Ohio App.3d 424, at 434, 575 N.E.2d 1190, at 1197. Therefore, if a party asserts claims that arise from or depend upon the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive. *Franklin Cty. Law Enforcement Assn., supra.* The Franklin County Court of Appeals addressed this issue in *Moore v. Youngstown State Univ.* (1989), 63 Ohio App.3d 238, at 242, 578 N.E.2d 536, at 538, stating: "[S]ince R.C. Chapter 4117 creates and defines the rights of public employees with respect to collective bargaining, the provision in R.C. 4117.09 for the maintenance of the instant suit vests jurisdiction of such actions in the courts of common pleas alone."

 The court finds that because plaintiff's rights were dependent upon the framework established in R.C. Chapter 4117, plaintiff was limited to the remedies and procedures provided in that chapter, and the Court of Claims is accordingly without jurisdiction to decide matters that are subject solely to a final and binding grievance procedure. Therefore, plaintiff's breach-of-contract claims are dismissed for lack of subject matter jurisdiction.

 Assuming, *arguendo,* that the Court of Claims does have jurisdiction over plaintiff's first and second causes of action asserting breach of contract, the court must determine whether plaintiff was discharged without just cause, and whether defendant breached its covenant of good faith and fair dealing with plaintiff. Plaintiff's disciplinary actions were undertaken according to the collective bargaining agreement provision and the progressive disciplinary process which applies to defendant's employees. Plaintiff was fully represented at each level of the disciplinary process and, in effect, had his August 1994 termination reversed. Therefore, defendant's adherence to the disciplinary procedures outlined in its contract with OCSEA demonstrates that defendant did not breach its covenant of good faith and fair dealing with plaintiff.

 With regard to plaintiff's second and final termination, plaintiff entered into a settlement agreement with defendant before pursuing further steps in the grievance procedure. In exchange for his resignation, plaintiff agreed to accept $1,000. As part of the signed settlement agreement, plaintiff agreed to waive all rights to bring any further legal action.

 In Ohio, settlement agreements are contracts. *Hageman v. Signal L.P. Gas, Inc.* (C.A. 6, 1973), 486 F.2d 479. Before a binding contract can exist, there must be a meeting of the minds as to every essential term of the contract.

*Messner v. Beals* (App.1934), 16 Ohio Law Abs. 506. Although plaintiff testified that he did not intend to waive all of his rights by signing the waiver and he did not understand or remember reading the waiver, he did acknowledge that he signed the settlement agreement directly underneath the disclaimer: "I have read the above paragraph and I am making a KNOWING AND VOLUNTARY WAIVER of my rights as set forth above." The court does not find plaintiff's testimony credible and finds that there was a meeting of the minds reached on every essential term of the contract. Therefore, plaintiff is bound by the terms of the settlement agreement.

Accordingly, plaintiff has failed to establish, by a preponderance of the evidence, that defendant terminated him without just cause, or breached its covenant of good faith and fair dealing with him; therefore, the court finds that plaintiff's first and second causes of action are without merit.

■ In plaintiff's third and fourth causes of action, he alleges he was discriminated against on the basis of race.

R.C. 4112.02 states:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the race [or] color * * * of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

■ R.C. 4112.01(A)(2) defines "employer" to include "the state, [and] any political subdivision of the state * * *." Accordingly, the Court of Claims does have jurisdiction over racial discrimination claims brought by state employees against their employer.

Absent direct evidence of racial discrimination, plaintiff must prove, by a preponderance of the evidence, a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. If a plaintiff is able to demonstrate a prima facie case, defendant need only show a legitimate nondiscriminatory reason for its actions. Once the employer meets its burden of proof, plaintiff-employee must prove defendant's reason was only a pretext for discrimination or was unworthy of credence. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

In order to establish a prima facie case plaintiff must prove that (1) he was a member of the statutorily protected class, (2) he was qualified for the position, (3) he suffered adverse employment action, and (4) he was replaced by a person not belonging to the protected class. See *St. Mary's Honor Ctr. v. Hicks* (1993), 509

U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, and *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 667, 591 N.E.2d 752, 754–755.

In the case at hand, there is no dispute that plaintiff is a member of a protected class based on race, as an African–American. In addition, plaintiff was qualified for the job as a therapeutic program worker. However, prior to his dismissal on August 30, 1994, plaintiff had an extensive disciplinary record of rules violations involving improper behavior toward managerial authority.

Prior to plaintiff's termination, he was the subject of several disciplinary actions at CPI, which included:

1. Written reprimand for not following instructions, August 18, 1989;

2. Written reprimand for not following instructions, May 11, 1990;

3. Written reprimand for verbal fighting in front of patients, December 4, 1990;

4. Written reprimand for failure to complete assignment, June 19, 1991;

5. Two-day suspension for insubordination and demeaning treatment of management, June 9, 1992;

6. Verbal reprimand for attendance, May 11, 1993;

7. Verbal reprimand for attendance, June 24, 1993;

8. Six-day suspension for neglect of duty, patient verbal abuse, and insubordination for demeaning and abusive treatment of management, November 8, 1993.

Prior to his September 13, 1995 resignation, plaintiff was disciplined for acts of sexual harassment against female co-workers. Plaintiff offered no evidence that white workers holding a comparable position as therapeutic workers committed offenses similar to his for which they could be subject to discharge or other disciplinary action. In addition, plaintiff offered no evidence that he was replaced by another person not in the protected class with the same or fewer qualifications. Defendant's labor relations officer, Linda Thernes, testified that she was not aware of any white therapeutic workers who had disciplinary records similar to those of plaintiff and who were not terminated.

Accordingly, the court finds that plaintiff's claim of racial discrimination is without merit, since a prima facie case has not been established.

■ Assuming, *arguendo*, that plaintiff has established a prima facie case of racial discrimination, defendant showed legitimate nondiscriminatory reasons for the adverse employment actions taken against plaintiff. The evidence submitted showed that plaintiff was disciplined for several violations of work rules prior to his August 1994 dismissal. With regard to his September 13, 1995 resignation, plaintiff admitted he was charged with four counts of gross sexual imposition

against his female co-workers and was ultimately convicted of two counts of attempted gross sexual imposition pursuant to a plea bargaining agreement.

Once defendant-employer has carried the burden of articulating a legitimate, nondiscriminatory reason for the employee's disciplinary action, plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons but, rather, were a pretext for discrimination. *McDonnell Douglas, supra.*

Although plaintiff alleges that defendant was attempting to reduce the number of black employees at CPI, plaintiff offered no testimonial evidence or statistical evidence to prove that a discriminatory reason was the cause of his termination; therefore, plaintiff has not carried his ultimate burden of proving racial discrimination by a preponderance of the evidence.

Based on the reasons contained in the foregoing decision, plaintiff's claims· of breach of contract and racial discrimination are without merit, and judgment shall be rendered for defendant.

*Judgment for defendant.*

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.