OPINION
Defendant-appellant, Isidoros S. Tiano, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying his preliminary motion to enforce an alleged settlement agreement, granting the parties a divorce, and determining the property division between the parties.
Appellant and plaintiff-appellee, Jane E. Mattlin-Tiano, were married in Columbus, Ohio, on June 22, 1991. The parties separated on August 11, 1996. On November 19, 1996, appellee filed a complaint for divorce, asserting incompatibility as grounds for divorce. Appellant answered and filed a counterclaim on December 4, 1996. Appellee filed a reply on December 12, 1996.
On October 16, 1998, appellant filed a motion to determine the existence of, and to enforce a purported settlement agreement. Appellant alleged that a settlement agreement had been reached between the parties resolving the financial issues and dividing the assets between them or, in the alternative, appellant argued that appellee must be estopped from denying the existence of the alleged agreement. Appellee opposed the above motion and denied the existence of an enforceable agreement between the parties.
On November 12, 1998, appellant filed an amended counterclaim for divorce. Appellee filed her reply on November 17, 1998.
The cause came before the trial court on January 25, 1999. The trial court conducted hearings on January 27 and 28, 1999, February 1 and 3, 1999, and finally, several days in February and May 1999. On September 22, 1999, the trial court issued its decision, followed by an addendum on October 4, 1999, and its judgment of October 18, 1999. From this judgment appellant appeals, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED BY FAILING TO FIND THAT A VALID AND ENFORCEABLE SEPARATION AGREEMENT EXISTED BETWEEN THE PARTIES.
 II. THE TRIAL COURT ERRED BY FAILING TO FIND THAT APPELLEE WAS ESTOPPED FROM DENYING THE EXISTENCE OF AN AGREEMENT.
 III. THE TRIAL COURT'S DECISIONS RELATING TO APPRECIATION OF SEPARATE PROPERTY DURING THE MARRIAGE ARE NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE.
 A. THE TRIAL COURT ERRED BY FAILING TO FIND THE APPRECIATION TO APPELLEE'S ONE-HALF INTEREST IN THE MORRIS MATTLIN TRUST WAS MARITAL PROPERTY SUBJECT TO DIVISION.
 B. THE TRIAL COURT'S DECISION THAT THE APPRECIATION TO APPELLEE'S VESTED ONE-HALF INTEREST IN THE TRUST WAS NOT THE RESULT OF THE EFFORTS OF EITHER PARTY IS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE.
 C. THE TRIAL COURT ERRED BY FAILING TO FIND THE APPRECIATION TO THE BN HOLDINGS MARITAL PROPERTY SUBJECT TO DIVISION.
 D. THE TRIAL COURT'S DECISION THAT THE APPRECIATION ON APPELLANT'S PROPERTIES IN GREECE IS MARITAL PROPERTY IS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE.
 IV. THE TRIAL COURT'S DETERMINATION THAT MRS. BETTY MATTLIN'S $200,000 GIFT WAS INTENDED SOLELY FOR APPELLEE IS AGAINST THE WEIGHT OF THE EVIDENCE.
 V. THE TRIAL COURT'S DECISION THAT APPELLEE ADEQUATELY TRACED THE $200,000 GIFT FROM MRS. BETTY MATTLIN IS AGAINST THE WEIGHT OF THE EVIDENCE.
 VI. THE TRIAL COURT'S DIVISION OF MARITAL PROPERTY IS INEQUITABLE.
In his first assignment of error, appellant asserts that the trial court erred in failing to find that a valid and enforceable separation agreement had been reached between the parties. The trial court concluded that an enforceable settlement agreement did not exist between the parties. We agree.
The determination as to whether there is a settlement agreement between two or more parties is a question of law. Continental W. Condominium UnitOwners Assn. v. Howard E. Ferguson, Inc. (1996), 74 Ohio St.3d 501. Thus, it is our task to determine whether the trial court erred as a matter of law in that it applied an erroneous standard or misconstrued the law. Id. at 502.
Settlement agreements are contractual in nature and enforceable.Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794. The burden of establishing the elements of a contract is on the party asserting the existence of a settlement agreement. Nilavar v. Osborn (1998),127 Ohio App.3d 1. Further, the parties must have had a meeting of the minds as to all elements of the contract. Newton v. Ohio Dept. of MentalHealth (1997), 83 Ohio Misc.2d 67 . Ascertaining the intentions of the parties is the province of the court as evidenced by the language of the contract. Where the contract is written and reflects a clear and unambiguous agreement, the intentions of the parties must be determined from within the four corners of the contract. See Aultman HospitalAssoc. v. Community Mutual Insurance Co. (1989), 46 Ohio St.3d 51. However, if the contract is oral, it will be enforced only if the terms are established by clear and convincing evidence. See Pawlowski, supra,
at 799.
In this case, appellant argued and asserts before this court that a settlement agreement existed between appellee and him. Appellant submitted two handwritten notes prepared by appellee, which according to appellant, taken together, constituted an enforceable settlement agreement. The first note was prepared on May 7, 1996. It consisted of a page of notes taken by appellee during a discussion the parties were having at a local coffee shop. The note lists seventeen assets of the parties with corresponding references to the division of those assets. Appellee testified that those were her notes of the meeting, dictated by appellant, and represent his demands of what he would accept in the event of a separation or an ultimate divorce. Appellee also testified that appellant advised her at the end of the meeting that he would accept one million dollars in cash in lieu of the asset division. Accordingly, appellee made such notation, adding that the note as a whole was for her consideration. Apparently, this last notation angered appellant and the meeting ended inconclusively.
We note here that both parties agree that the May 7, 1996 note, standing alone, does not constitute a settlement agreement. However, appellant argues that the May 7 note provides the backdrop of the second note, drafted on July 16, 1996. The July note was also written by appellee, which states in its entirety:
 Isidoros has worked for the last 11 years to help me with my family business. He has earned the Tex-Vent Company and Blockbuster projects, worth aprox. [sic] $1,000,000. He has also earned ~ of the sale price of the Morse Hamilton Land. 5 acres that we got the trust to buy. This value should aproximate [sic] $200,000 — Totaling $1,200,000 to Isidore
All My Love, Jane Mattlin-Tiano.
Appellant argues that the July note was intended to be a final determination of the parties' affairs. He asserts that it constitutes an offer that was accepted by appellee and supported by consideration. He further asserts that there was a meeting of the minds under the circumstances. The trial court disagreed based on the conflicting evidence before it. Appellee testified that she gave the note to appellant only to "appease him." She indicated that during a conversation prior to her giving him the note, appellant had indicated that if he knew how she felt about him with regard to the items on the list he would have felt differently about staying in the marriage. Appellee testified that the tone of the conversation gave her hope that the marriage could still be saved. Accordingly, she went to the bathroom of the establishment where the meeting took place and drew the note in question.
In reviewing the trial court's decision, we must give credence to the factual findings of the trial court and presume that they were correct. Obviously, the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice deflections and weigh the credibility of the witnesses' testimony accordingly. See Barkley v. Barkley (1997),119 Ohio App.3d 155.
However, in ascertaining the intentions of the parties, we must independently determine whether the July note reflects a clear and unambiguous agreement that the intentions of the parties could be determined from the language therein and without reference to extraneous circumstances. Appellant argues that because the parties were aware of all of their assets, which were predominantly under the control of appellee, and since the parties had no children necessitating custody matters and child support, the July note provided all of the necessary terms required to complete a settlement agreement. We disagree.
Looking at the evidence before us, as previously outlined, we cannot determine the parties' intent from within the four corners of this purported agreement. At best, the note in question acknowledges that appellant is entitled to share in those assets due to his efforts over the past "eleven years." It would take more than a mere acknowledgment by one party to a dispute that the other is indeed entitled to a share in the subject of the dispute to warrant the conclusion that such statement is a final agreement as to the division of the disputed property. The note is insufficient to support a conclusion that a final settlement agreement between the parties has been reached. Accordingly, appellant's first assignment of error is overruled.
In his second assignment of error appellant argues, in the alternative, that he has reasonably relied, to his detriment, on appellee's representations and therefore appellee must be estopped from denying the existence of her promise. The trial court concluded that appellant had failed to introduce sufficient evidence of his detrimental reliance on the "promises" made in the July note. We agree.
Promissory estoppel is defined as "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Talley v. Teamsters (1976), 48 Ohio St.2d 142, 146 (quoting Restatement of Contracts 2d, Section 90). The Talley court denied recovery where the detrimental reliance was not of a "sufficiently definite and substantial nature so that injustice will result if the `promise' is not enforced." Id.
In this case appellant argues that in reliance on appellee's "promise" he vacated the marital residence, discontinued his membership in the New Albany Country Club, and signed over his interest to the parties' joint P.C. Financial Network ("PCFN") account. With respect to the PCFN account, the record indicates that the parties stipulated to the fact that approximately $175,000 out of the total balance of approximately $186,000 was the separate property of appellee. As to vacating the marital residence and discontinuing the country club membership, we agree with the trial court's conclusion that such acts are consistent with those conducted by any couple in the process of ending their relationship.
Appellee's testimony that she gave appellant the note in question in an attempt to save the marriage goes against the claim that it was meant as a settlement agreement, or a promise of the same. The trial court heard the testimony of both parties and in its discretion found appellee's testimony more believable. It is a finding that we will not disturb. Accordingly, appellant's second assignment of error is overruled.
In his third assignment of error appellant contends that the trial court's decisions relating to the appreciation in value of the Morris Mattlin Trust, the Huntley Road property, and appellant's property interests in Greece, are not supported by sufficient, credible evidence.
The trial court held that appellee's interest in the trust is her separate property because she had no present vested interest during the marriage, and hence appellant may not claim any of the increased value of this trust. Alternatively, the court found that even if appellee had a vested interest in the trust, the evidence showed that the increase in its value was due to the efforts of neither appellee nor appellant. The trial court held that any appreciation of the trust is the separate property of appellee.
As to the Huntley Road property, the trial court looked at it as part of the holdings of the BN Partnership, which owns the property. The court found that the appreciation in appellee's share in the partnership is marital property subject to division. Appellee's twenty-five percent interest in the partnership was valued at $156,293 at the end of the marriage and $127,490 at the beginning of the marriage. Therefore, $28,803 was found to be the appreciation subject to division. Finally, the trial court found that the appreciation to appellant's property in Greece was marital property because it was the result of appellant's labor, monetary, or in-kind contribution during the marriage.
The distinction between separate and marital property, that is relevant to this analysis, is found in R.C. 3105.171. Separate property is defined to include "real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). Separate property also includes the "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C.3105.171(A)(6)(a)(iii). Passive income is income "acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).
Marital property is defined to include "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C.3105.171(A)(3)(a)(iii). Finally, the Revised Code emphasizes the distinction between the two types of property by stating that marital property as defined in the code "does not include any separate property." R.C. 3105.171(A)(3)(b).
A trial court has wide discretion in making divisions of property in domestic relations' cases. Berish v. Berish (1982), 69 Ohio St.2d 318. Absent an abuse of discretion, a trial court's decision will be upheld.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128 . Abuse of discretion implies more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217. There is no abuse of discretion where there is some competent, credible evidence to support the trial court's decision. Ross v. Ross (1980), 64 Ohio St.2d 203.
We must now determine whether there was sufficient evidence in the record to support the trial court's findings with respect to the appreciation in value of the trust, the Huntley Road property, and appellant's property in Greece.
Appellant contends that the appreciation in value to the trust was due to the efforts of both parties and therefore must be considered marital property subject to division. The trial court found that the increase in the value of the trust was not the result of the efforts of either party. The question before us is whether the trial court's finding is supported by relevant, competent, and credible evidence.
The trust officer for the Park National Bank ("Park National") testified that the trust's portfolio value has not increased or significantly changed since 1984, when the bank acquired the trust from Huntington National Bank ("Huntington"). The trust officer also testified that he had not even met the parties prior to this litigation. On the other hand, appellant testified that he had attended over thirty meetings with Park National regarding the trust. Appellant further testified that he was instrumental in getting the trust to buy a parcel of land referred to as the Morse-Hamilton Road property. According to appellant, this purchase resulted in an overall increase in the value of the trust holdings. Additionally, appellant testified that he had an active role in the litigation between the trust and the Huntington that resulted in the trust being transferred to Park National. Appellant claims that the transfer of the trust enhanced its value because of the settlement that was ultimately reached between the trust and Huntington. Mr. Campisi, one of the attorneys involved in the trust litigation, testified that appellant's efforts and alleged contributions to the litigation effort had no impact on the outcome of the litigation. He further testified that most of the litigation had taken place after the parties had separated.
Based on the evidence in the record, we cannot say that the trial court abused its discretion in finding that the appreciation in the value of the trust was not due to the efforts of either party. The trial court heard the testimony of the witnesses, observed their demeanors and gestures, and found against appellant. The trial court did not, therefore, act arbitrarily, unreasonably, or unconscionably.
With respect to the Huntley Road property, appellant argues that the increase in its value is marital property subject to division. According to appellant's witness, the net increase in value of the property is $265,208. Based on the percentage of ownership, appellant contends that $74,929 should be imputed to appellee through the Mattlin Company, and a $66,302 increase appellee enjoyed through her direct ownership of a percentage of the property. However, the trial court believed appellee's witness and found that the increase in the value of the property is only $28,803.
The Huntley Road property is owned by the BN partnership. Appellee owns twenty-five percent interest in BN. The Mattlin Company owns twenty-six percent interest in BN. The remaining forty-nine percent is owned by other members of appellee's family. The BN partnership is a holding company, where the Huntley Road property is but one of its holdings. The trial court's finding is premised on the fact that since appellee only owns twenty-five percent of the Huntley Road property, then only an equal percentage of the increase in the value of the property is marital property.
We find the trial court's finding not to be against the weight of the evidence. The trial court was in the best place to evaluate the credibility of the witnesses. We will not disturb such findings absent an abuse of discretion.
Finally, appellant contends the trial court's finding that the appreciation to appellant's property in Greece was contrary to the evidence. The trial court concluded that the appreciation was caused by appellant's efforts, which makes it marital property pursuant to R.C.3105.171.
The evidence before the trial court indicated that appellant took an active role in managing his properties in Greece. Both parties testified that they took trips to Greece almost yearly ever since appellant inherited the properties in question. There were also indications in the record that appellant followed up on the management of the properties by telephone and through family members in Greece. This evidence leads to the conclusion that the trial court's finding is not against the weight of the evidence. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant contends the trial court's holding that a $200,000 gift from appellee's mother was intended solely for appellee, is against the weight of the evidence. Appellant argues here, as he did in the trial court, that the burden is on appellee to prove by clear and convincing evidence that the gift was only intended for her.
Under the definition of separate property, R.C. 3105.171(A)(6)(a)(vii) states that separate property includes "[a]ny gift * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." The question is whether appellee proved by clear and convincing evidence that the gift from her mother was intended solely for her benefit and not for both parties.
The significance of this gift is to determine the amount of appreciation on a piece of property, located at 3539 East Broad Street, that appellee had owned with her brother prior to the marriage. During the marriage, appellee bought her brother's share in the property using the $200,000 gift. The trial court determined that the property had an equity of $406,159; that appellee had a separate property interest of $312,500 comprised of $112,500, the one-half interest she owned at the time of the marriage and the $200,000 she received from her mother in order to purchase her brother's share. The trial court concluded that $93,659 was marital property subject to division.
According to appellant, the $200,000 gift was intended for both parties and therefore, the court should consider $293,659 of the value of the East Broad Street property as marital property subject to division. We disagree.
The record indicates that appellee's mother gave her the disputed money after her brother demanded this amount for his share of the property. It is undisputed that the half interest in the property was not worth that much. Appellee's mother provided the funds "in order to keep peace in the family." It may even be viewed as a gift to appellee and her brother, because it was over and beyond what the property was worth. The trial court weighed the evidence and determined that the gift was intended for appellee only and accepted appellee's testimony as sufficient to overcome the presumption that the gift was intended for both. We cannot say that the trial court's determination was arbitrary, unreasonable, or unconscionable. Appellant's fourth assignment of error is overruled.
In his fifth assignment of error appellant argues that even if the $200,000 gift was intended for appellee alone, the money was commingled in such a way that it could not be adequately traced.
R.C. 3105.171(A)(6)(b) states that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Based on the evidence before it, the trial court concluded that appellee adequately traced the money in question.
Appellant argues that since the joint account where the money was deposited fell substantially below the $200,000, appellee could not trace the money paid to her brother as the money gifted to her by her mother. But the record also indicates that appellee replaced the money in the account with funds that are indisputably her separate property. Taking appellant's argument to its logical conclusion would lead to the inevitable result that appellee used her separate funds to purchase her brother's share in the property. Therefore, only the appreciation on the property is marital property subject to division. We find no error in the trial court's conclusion. Appellant's fifth assignment of error is overruled.
In his sixth and final assignment of error, appellant contends that the trial court's division of marital property was inequitable.
R.C. 3105.171 provides the general framework a trial court must follow in dividing marital property in a divorce proceeding. The court must first ascertain what constitutes marital and what constitutes separate property. R.C. 3105.171(B). Then the court shall divide the marital property equally. R.C. 3105.171(C)(1). The court may deviate from an equal division of marital property if it finds that such division is inequitable. Id.
In this case, the trial court divided the marital property equally as required by R.C. 3105.171. There would have been an unequal division only if one or more of the preceding errors had been sustained. Appellant's sixth assignment of error is overruled.
Appellant's six assignments of error are overruled, and the judgment of the trial court is affirmed.
BOWMAN and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.